UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KELVIN PETTIGREW, | ) |
|     Plaintiff, | ) ) ) |
| vs. | )    No. 22-1101-SHM-tmp ) |
| SHELBY COUNTY CORR. CTR. WARDEN, et al., | ) ) ) |
|     Defendants. | ) ) |

**ORDER GRANTING IN PART & DENYING IN PART THE PENDING MOTION (ECF NO. 7);
VACATING THE ORDER DISMISSING CASE (ECF NO. 5) & THE JUDGMENT (ECF NO. 6);
REOPENING THE CASE;
DIRECTING PETTIGREW TO FILE A NON-PRISONER *IN FORMA PAUPERIS* AFFIDAVIT;
MODIFYING THE DOCKET;
DISMISSING THE COMPLAINT (ECF NO. 1) WITH PREJUDICE IN PART & WITHOUT
PREJUDICE IN PART;
AND GRANTING LEAVE TO AMEND THE CLAIMS DISMISSED WITHOUT PREJUDICE**

On May 20, 2022, Kelvin Pettigrew filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1) and a motion for leave to proceed *in forma pauperis* (ECF No. 2 (the "IFP Motion")). When Pettigrew filed the complaint, he was confined at the Shelby County Correctional Center (the "SCCC") in Memphis, Tennessee. (ECF No. 1-2 at PageID 6.) Because the IFP Motion did not include "a current copy of [Pettigrew's] [inmate] trust account statement", the Court entered an Order on May 20, 2022, that directed Pettigrew to comply with 28 U.S.C. § 1915(a)(2) or pay the $402 civil filing fee. (ECF No. 4 at PageID 11-12 (the "May 20 Order").) The Clerk of Court mailed the May 20 Order to Pettigrew at the SCCC. (*Id.*) On August 4, 2022, the Court entered an Order (1) denying the motion for leave to proceed *in forma pauperis*, (2) dismissing the case without prejudice, and (3) assessing the $402 civil filing fee because Pettigrew had failed to comply with the May 20 Order. (ECF No. 5 (the "Dismissal Order").) On August 4, 2022, the

Court entered judgment. (ECF No. 6 (the "Judgment").) On August 18, 2022, Pettigrew filed a motion to vacate judgment, to re-instate the case, and to serve summons on all Defendants. (ECF No. 7 (the "Motion").)

The Motion is before the Court.

For the reasons explained below: (1) the Motion (ECF No. 7) is GRANTED to the extent Pettigrew seeks to (a) vacate the Dismissal Order and the Judgment and (b) re-open the case; (2) the Dismissal Order (ECF No. 5) and the Judgment (ECF No. 6) are VACATED; (3) the Clerk is DIRECTED to re-open the case; (4) the Motion is DENIED to the extent Pettigrew seeks to serve summons on all Defendants; (5) the complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief; and (6) leave to amend is GRANTED.

I.  **THE MOTION**

The Motion alleges that the SCCC "has had chaotic to non-existent mail delivery since … May 2020" and that Pettigrew received the Judgment on August 11, 2022. (ECF No. 7 at PageID 17.) Pettigrew alleges that he had "sent in his inmate account statement on 05/2022." (ECF No. 7 at PageID 17.) Pettigrew alleges that he "kept copies of his submission to the Court and is resending it with this [Motion]." (*Id.*) The Motion attaches a three-page printout about "Inmate Kelvin D. Pettigrew" covering "order[s]" and "deposit[s]" during the period November 6, 2021 through May 2, 2022. (ECF No. 7-1 (the "Statement") at PageID 19-21 (showing an account balance of -$2.49; and bearing the signature of "A. Taylor", dated May 6, 2022, under a stamped statement of "I hereby certify that this is a current inmate trust fund statement of account").) Pettigrew does not explain why he did not submit the Statement with the complaint (ECF No. 1) or the IFP Motion (ECF No. 2), which were filed on May 20, 2022. Pettigrew does not identify the particular date on which he allegedly mailed the Statement to the Court. (ECF No. 7 at PageID 17.)

2

The Motion seeks: (1) sanctions against the SCCC "for non-delivery of mail"; (2) service of summons on all Defendants by the United States Marshal Service (the "USMS"); (3) an order directing Pettigrew's release "from punitive segregation"; and (4) leave to proceed *in forma pauperis*. (*Id.*)

The accuracy of Pettigrew's representations about the Statement is questionable. The Statement does not bear: (1) a postmark demonstrating that Pettigrew mailed it to the Court; or (2) indicia showing that Pettigrew placed the Statement into the SCCC's mail system in May 2022. The Clerk of Court did not receive a copy of the Statement from Pettigrew in May 2022, when he alleges he sent it. (*See* ECF No. 7 at PageID 17.)[1]

Nevertheless, because of (1) Pettigrew's *pro se* status and (2) his allegation of delays in the SCCC's mail system, the Court GRANTS the Motion (ECF No. 7) to the extent Pettigrew seeks to vacate the Dismissal Order and the Judgment. The Court VACATES the Dismissal Order (ECF No. 5) and the Judgment (ECF No. 6). The Court directs the Clerk to RE-OPEN the case for the limited purpose of allowing the Court to screen the complaint (ECF No. 1) pursuant to the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e.

Pettigrew submitted a properly completed *in forma pauperis* affidavit with the IFP Motion (ECF No. 2), and the Motion attaches the Statement. (ECF No. 7.) *See* 28 U.S.C. § 1915(a)(2).[2] The Court GRANTS leave to proceed *in forma pauperis* in accordance with the terms of the PLRA. Pettigrew is no longer confined at the SCCC. According to the Tennessee Department of

---

[1] The Clerk of Court has never received a document seeking "to get status on [the] action", which Pettigrew alleges he submitted on an unspecified date. (*See id.* at PageID 18.)

[2] "A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2).

3

Correction's Felony Offender Information website, Pettigrew is currently assigned to the Lexington Probation and Parole Office. (*See* https://foil.app.tn.gov/foil/details.jsp (last accessed Mar. 29, 2023).) When Pettigrew was released from confinement, the entire amount of his obligation to pay the civil filing fee remained outstanding because no portion of the fee had been paid from his inmate trust account at the SCCC. Under these circumstances, the Sixth Circuit has held that "the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status." *McGore v. Wrigglesworth*, 114 F.3d 601, 613 (6th Cir. 1997), partially overruled on other grounds by *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Pettigrew must seek non-prisoner pauper status or pay the four hundred and two dollar ($402) civil filing fee. Pettigrew is ORDERED to submit, on or before April 13, 2023, a properly completed and signed non-prisoner *in forma pauperis* affidavit or $402.00.[3] The Clerk SHALL MAIL Pettigrew a copy of the non-prisoner *in forma pauperis* affidavit form along with this Order.

Failure to comply with this Order in a timely manner will result in the dismissal of this action without further notice, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute.

For the reasons explained below, the Motion (ECF No. 7) is DENIED to the extent Pettigrew seeks sanctions on the SCCC, service of summons by the USMS, and release from punitive segregation.

---

[3] The civil filing fee is $350. 28 U.S.C. § 1914(a). Under § 1914(b) and the Schedule of Fees set out following the statute, an administrative fee of $52 for filing any civil case also is required. (*See* https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.) The $52 administrative fee does not apply if leave to proceed *in forma pauperis* is granted. If Pettigrew does not seek non-prisoner pauper status, he will be responsible for the entire $402 fee.

## II. THE COMPLAINT

Pettigrew alleges that he was diagnosed with "severe sleep apnea" on an unspecified date while he was "in custody in Mason, TN." (ECF No. 1 at PageID 1.) Pettigrew alleges that "[i]t was determined [that he] needed" a sleep apnea breathing device (the "Equipment"). (*Id*. at PageID 2.) Pettigrew alleges that (1) CCA / CoreLogic and (2) Shelby County Corrections have not provided him with the Equipment. (*Id*.) Pettigrew filed a grievance about failure to receive the Equipment. He received no response and was "threatened with punitive relocation or transfer if he proceeded to file any grievance further." (*Id*. at PageID 2.)

The complaint alleges claims of: (1) negligence; and (2) violation of the Americans With Disabilities Act. (*Id*. at PageID 2-3.)

Pettigrew sues: (1) the "Director/Warden" of the SCCC (the "Warden"); (2) the United States Bureau of Prisons (the "BOP"); (3) CCA / CoreLogic ("CCA")[4]; (4) the United States Marshals Service (the "USMS"); and (5) the United States of America (the "USA"). (*Id*. at PageID 1.)

Pettigrew seeks: (1) injunctive relief requiring provision of the Equipment; and (2) a three million dollar ($3,000,000.00) "penalty for this flagrant violation of the Americans With Disabilities Act." (*Id*. at PageID 3.)

The Clerk SHALL MODIFY the docket to add Shelby County, Tennessee as a Defendant.

## III. LEGAL STANDARD FOR SCREENING

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

---

[4] The Court construes the term "CCA / CoreLogic" in the complaint (ECF No. 1 at PageID 1) to refer to Corrections Corporation of America, which is the former name of CoreCivic – *i.e.*, a private company that manages correctional facilities across the United States. (*See* https://www.corecivic.com/news/corrections-corporation-of-america-rebrands-as-corecivic (last accessed Mar. 29, 2023); https://www.corecivic.com/about (last accessed Mar. 29, 2023).)

>(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  Federal Rule of Civil Procedure 8 provides guidance on this issue.  Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to those drafted by lawyers.  "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements"

and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

IV.   **SCREENING ANALYSIS OF THE COMPLAINT**

   A.   **CLAIMS AGAINST THE BOP, THE USMS, AND THE USA**

Pettigrew sues under § 1983. (ECF No. 1 at PageID 1.) To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Both prongs of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir. 1991).

The BOP, the USMS, and the USA (collectively, the "Federal Defendants") are entities of the United States government, not state actors. To state a viable claim against federal actors, a plaintiff must allege and show that he was deprived of a right secured by the federal Constitution or laws of the United States by a person acting under color of federal law. *See Bivens v. Six Unknown Fed. Agents*, 403 U.S. 388 (1971). "Analysis under *Bivens* is identical to that under § 1983, the only difference being that *Bivens* pertains to federal actors." *Richardson v. United States Marshals Serv.*, No. 3:07-cv-0304, 2007 WL 1464582, at *1 (M.D. Tenn. May 15, 2007). Any claims that Pettigrew has against the Federal Defendants arise under *Bivens*.

*Bivens* authorizes damage suits against individual federal officials, but *Bivens* does not authorize such suits against the United States, its agencies, or its employees in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) (a prisoner "may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP"). A suit under *Bivens* may be brought only against individual officers for certain constitutional violations. *See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 431 (6th Cir. 2016) (a *Bivens* action is based

upon alleged constitutional violations by federal officials in their individual capacities). "*Bivens* has not been expanded to include actions against the United States itself, or against federal agencies." *Milligan v. United States*, No. 3:07-cv-1053, 2008 WL 19994823, at *12 (M.D. Tenn. May 2, 2008) (citing *Nuclear Transport & Storage, Inc. v. United States,* 890 F.2d 1348, 1352 (6th Cir. 1989) ("Since the United States has not waived its sovereign-immunity and consented expressly to be sued in a *Bivens*-type action, such suits cannot be brought against the United States")). "*Bivens* provides no basis for raising constitutional claims against either the United States or the U.S. Marshals Service." *Milligan*, 2008 WL 19994823, at *12.

Pettigrew's claims under *Bivens* against the Federal Defendants are DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law.

### B. OFFICIAL CAPACITY CLAIMS

Pettigrew does not state whether he sues the Warden in the Warden's official or individual capacity. The Sixth Circuit requires plaintiffs to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Wells*, 891 F.2d at 592. "Absent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593). The Court construes the complaint to allege that Pettigrew sues the Warden in the Warden's official capacity. Pettigrew's official capacity claims against the Warden are treated as claims against the Warden's employer — Shelby County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Shelby County may be held liable *only* if Pettigrew's injuries were sustained pursuant to an unconstitutional custom or policy of Shelby County. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the

municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Pettigrew does not allege that he has been deprived of a right because of a policy or custom of Shelby County. Instead, he seeks relief based on failure to receive the Equipment. Pettigrew does not allege that the Warden (1) was aware of Pettigrew's purported need for the Equipment or (2) refused to provide the Equipment pursuant to a Shelby County policy or custom. The complaint's allegations do not demonstrate an official policy or custom of Shelby County that caused Pettigrew to suffer deprivation of his constitutional rights.

Pettigrew's claims against Shelby County and against the Warden in the Warden's official capacity are DISMISSED WITHOUT PREJUDICE for failure to allege sufficient facts demonstrating a claim to relief.

### C. CLAIMS AGAINST CCA / CORELOGIC

Pettigrew alleges that the SCCC received Pettigrew's "complete medical file" from Pettigrew's prior correctional facility in Mason, Tennessee, but that CCA has not provided the Equipment to him. (ECF No. 1 at PageID 2.)

"A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit

9

has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18. CCA "cannot be held liable under a theory of *respondeat superior*." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against CCA, Pettigrew "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of Pettigrew's rights. *See id.*

The complaint does not describe a policy or custom of CCA and does not allege that Pettigrew was denied the Equipment pursuant to a policy or custom of CCA. Pettigrew does not allege facts demonstrating that a CCA policy was "the moving force" behind a violation of Pettigrew's constitutional rights. (*See* ECF No. 1 at PageID 1-3.)

For these reasons, Pettigrew's claims against the CCA are DISMISSED WITHOUT PREJUDICE for failure to allege sufficient facts stating a claim to relief.

### D. CLAIMS AGAINST "ET. AL."

Pettigrew sues "et. al." as a Defendant. (ECF No. 1 at PageID 1.)

Pettigrew's use of "et. al." fails to state a claim against anyone. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). Pettigrew may not make claims against a universe of unspecified persons who have no notice of claims against them. Pettigrew's claims against "et. al." are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### E. CLAIM OF NEGLIGENCE

Pettigrew alleges that he "is suffering from intentional negligence" and that "he has no choice [but] … to bring this action against the Defendants … due to deliberate negligence." (ECF No. 1 at Page 2.) Pettigrew's claim of negligence is not well taken.

Negligent conduct is not actionable under § 1983 because it does not rise to the level of a

10

constitutional deprivation. *See Lewellen v. Metropolitan Gov't of Nashville & Davidson Co., Tenn.,* 34 F.3d 345 (6th Cir. 1994) ("[I]t is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest").

Pettigrew's claim of negligence is DISMISSED WITH PREJUDICE for failure to state a claim to relief under § 1983 as a matter of law.

### F. CLAIM OF VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Pettigrew alleges that "all Defendants" are liable for "violation of the Americans With Disabilities Act." (ECF No. 1 at PageID 3.) Pettigrew does not allege facts supporting his legal conclusion.

The Americans With Disabilities Act, 42 U.S.C. § 12131, *et seq.* (the "ADA"), is applicable to state and local government entities, including prisons and county jail facilities. *Doker v. Montgomery Cnty. Jail*, No. 3:17-cv-0947, 2017 WL 3172745, at *1 (M.D. Tenn. July 26, 2017). To establish a prima facie case under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). To succeed on a claim under the ADA, Pettigrew must first demonstrate that he is a member of a protected class because he has a disability within the meaning of the ADA. Under the ADA, a "disability" is a "physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). Major life activities include breathing, hearing, seeing, walking and working. *See* 29 C.F.R. § 1630.2(i).

Pettigrew alleges that he "frequently stops breathing in his sleep." (ECF No. 1 at PageID 1.) Pettigrew does not allege facts demonstrating a substantial limitation on his ability to breathe because he alleges that sleep apnea affects his breathing only during sleep. Pettigrew does not

11

allege that sleep apnea prevents him from engaging in activities other than sleep. The Sixth Circuit has concluded, in similar sleep apnea contexts:

> [Plaintiff]'s bare assertions of sleep apnea, without any supporting medical evidence, cannot establish a 'physical or mental impairment' within the meaning of the ADA … Our circuit precedent has consistently held that sleeping problems like [Plaintiff]'s – 'getting only 2 to 3 hours of restful sleep per night, ... snoring, and extreme difficulty breathing while sleeping' – fail to constitute a substantial limitation on a major life activity … While sleep apnea may well constitute a disability for some individuals, [the plaintiff's] descriptions of the effects of his condition are insufficient to establish the level of severity required to qualify as a 'substantial limitation' on major life activities.

*Neely v. Benchmark Family Serv.*, 640 F. App'x 429, 433-34 (6th Cir. 2016) (internal citations and quotations omitted); *accord Rossi v. Alcoa*, 129 F. App'x 154, 158 (6th Cir. 2005).[5]

Pettigrew fails to allege facts demonstrating a substantial limitation on (1) the major life activity of breathing or (2) major life activities other than breathing. Because the complaint fails to allege sufficient facts demonstrating that Pettigrew has a disability under the ADA, the Court need not address the qualification and discrimination prongs of an ADA claim. Pettigrew's claim under the ADA is DISMISSED WITHOUT PREJUDICE for failure to allege facts demonstrating a claim to relief.

Pettigrew's allegations about the Equipment would not state a claim to relief even if the Court were to construe the allegations as a claim of deprivation of medical care under the Eighth Amendment.

---

[5] *See also Cockrell v. United Parcel Serv.*, No. 3:08-cv-0128, 2009 WL 2448571, at *1 (N.D. Tex. Aug. 10, 2009) ("Plaintiff's medical records show he has been diagnosed with possible sleep apnea, but do not reference any problems he has had in caring for himself. Additionally, sleep apnea is not disabling without evidence that it substantially limits a major life activity. Plaintiff has not shown he is disabled within the meaning of the ADA. Thus, Plaintiff cannot make a prima facie case of discrimination under the ADA"); *Brown v. Triboro Coach Corp.*, 153 F. Supp. 2d 172, 182 (E.D.N.Y. 2001) ("Brown has failed to show a substantial limitation on his ability to breathe because his sleep apnea affected his breathing only during sleep").

The Court reviews claims by prisoners[6] about the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." To state a cognizable Eighth Amendment claim for deprivation of medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

Eighth Amendment claims have both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298. The objective component of a medical care claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component requires that jail officials acted with the requisite intent – *i.e.*, had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show prison officials' "deliberate indifference" to a substantial risk of serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he

---

[6] The plausible inference from the record is that Pettigrew was a prisoner at the time of the events alleged in the complaint. (*See* https://foil.app.tn.gov/foil/details.jsp (last accessed Mar. 29, 2023) (Pettigrew's eight (8) year sentence for cocaine offenses was imposed on March 31, 2003, with an effective date of July 7, 2017).)

subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards it. *Id.* at 837.

Interrupted rest from sleep apnea can constitute a serious medical need for purposes of an Eighth Amendment claim of deprivation of medical care. However, a diagnosis of sleep apnea can include a wide range of conditions. An order for a CPAP machine does not necessarily suggest that Pettigrew's sleep apnea is serious or life threatening. Pettigrew fails to allege his medical diagnosis with specificity, relying instead on conclusory allegations about potential risks. (*See* ECF No. 1 at PageID 1 (alleging "a severe form of sleep apnea").)

Pettigrew also fails to support his generalized allegation of "stop[ping] breathing in [his] sleep." (*Id.*) For example, he does not allege the frequency or duration of nocturnal breathing cessation or whether it causes symptoms such as high blood pressure, headaches, or daytime hypersomnia. Pettigrew fails to allege the Eighth Amendment's objective component.

Pettigrew alleges that the SCCC "received his complete medical file from CCA Mason" (ECF No. 1 at PageID 2), but he does not allege facts demonstrating (1) what, if anything, the "medical file" showed about his sleep apnea or (2) that the Warden, an SCCC employee, or a CCA employee personally examined Pettigrew or otherwise subjectively knew about his "severe form of sleep apnea." *See Farmer*, 511 U.S. at 837. Pettigrew fails to allege the Eighth Amendment's subjective prong.

For these reasons, even if the Court were to construe the complaint to allege an Eighth Amendment claim of inadequate medical care, Pettigrew would fail to state a claim to relief.

G. **CLAIM OF PUNITIVE SEGREGATION AND CLAIM FOR SANCTIONS AGAINST THE SCCC**

The Motion (1) alleges that the Defendants have placed Pettigrew in punitive segregation and (2) seeks sanctions against the SCCC "for non-delivery of mail." (ECF No. 7 at PageID 18.) To the extent the Motion seeks to vacate the Dismissal Order and the Judgment to allege these two

14

claims, the Court screens the claims *infra* to expedite screening under the PLRA. *See* Section I., *supra*.

1. *Punitive Segregation*: The Motion alleges vaguely that Pettigrew is in "punitive segregation." (ECF No. 7 at PageID 18.) Pettigrew's release from the SCCC mooted his claims under § 1983 for injunctive relief. *See Brasher v. White*, No. 9-1279, 2022 WL 599222, at *7 (W.D. Tenn. Feb. 28, 2022) (internal citations omitted).[7]

2. *Undelivered Mail*: The plausible inference from the Motion is that Pettigrew seeks sanctions for "non-delivery" of one or more of the May 20 Order, the Dismissal Order, or the Judgment, which resulted in the dismissal of the case. (ECF No. 17 at PageID 18.) This Order, vacates that dismissal. It is not within the province of the Court to supervise the operations of state correctional facilities, such as by enforcement of mail delivery policies at jails. *See Lewellen*, 34 F.3d at 347 (§ 1983 does not provide a remedy for violating state laws or regulations).

To the extent Pettigrew alleges a claim of punitive segregation and a claim for sanctions about undelivered mail, those claims are DISMISSED WITH PREJUDICE.

V. **AMENDMENT UNDER THE PLRA**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain*, 716 F.3d at 951) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even

---

[7] Inmates' cell assignments do not rise to the level of a constitutional violation. An inmate does not have a constitutionally protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *see also Sandin v. Conner*, 515 U.S. 472, 484-87 (1995); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002). Confinement to disciplinary segregation and restrictions on unrestrained inmate movements generally do not qualify as atypical and significant hardship in the context of prison life. *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005).

when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants leave to amend those portions of the complaint dismissed without prejudice under the conditions set forth below.

## VI.    CONCLUSION

For the reasons explained above:

A.    The Motion (ECF No. 7) is GRANTED to the extent Pettigrew seeks to (1) vacate the Dismissal Order and the Judgment and (2) re-open the case.

B.    The Dismissal Order (ECF No. 5) and the Judgment (ECF No. 6) are VACATED.

C.    The Clerk is DIRECTED to re-open the case.

D.    The Motion (ECF No. 7) is DENIED to the extent Pettigrew seeks to serve summons on all Defendants.

E.    The complaint's (ECF No. 1) claims under *Bivens* against the Federal Defendants, the complaint's claims against "et. al.", the claim of negligence, the Motion's (ECF No. 7) claim of punitive segregation, and the claim for sanctions are DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

F.	The complaint's (1) claims against Shelby County and against the Warden in the Warden's official capacity, (2) claims against the CCA, (3) claim under the ADA, and (4) claim under the Eighth Amendment for deprivation of medical care (collectively, the "Claims Dismissed Without Prejudice") are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Leave to amend the Claims Dismissed Without Prejudice is GRANTED.  Amended claims must be filed within twenty-one (21) days after the date of this Order.  An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Pettigrew's claims.  An amended complaint supersedes the complaint and must be complete in itself without reference to the prior pleadings.  Pettigrew must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count.  If Pettigrew fails to file an amended complaint within the time specified, the Court will dismiss the complaint with prejudice in its entirety and enter judgment.  The Court recommends that any such dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g).  *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021).

G.	Pettigrew is ORDERED to submit, on or before April 13, 2023, either a properly completed and signed non-prisoner *in forma pauperis* affidavit or $402.00.  The Clerk SHALL MAIL a copy of the non-prisoner *in forma pauperis* affidavit form to Pettigrew along with this Order.  Pettigrew's failure to comply with this Order in a timely manner will result in the dismissal of this action without further notice, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute.

IT IS SO ORDERED, this 30th day of March, 2023.

                                                 /s/ *Samuel H. Mays, Jr.*
                                                 SAMUEL H. MAYS, JR.
                                                 UNITED STATES DISTRICT JUDGE